IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT SNYDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:25-cv-00273 (RDA/LRV) |
| ) | |
| TRANSDEV SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Enforce Settlement Agreement (the "Motion") (Dkt. 22). Plaintiff's response was due on October 17, 2025, Dkt. 21; *see also* Local Civil Rule 7(F)(1); however, to date Plaintiff has not filed a responsive brief. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 23), the Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

On February 13, 2025, Plaintiff filed the instant Complaint asserting claims for age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), disability discrimination in violation of the Americans with Disabilities Act (the "ADA"), and retaliation for filing a workers' compensation claim in violation of Virginia public policy. Dkt. 1. During briefing on Defendant's Motion to Dismiss, the Parties received an arbitrator's decision in an ancillary arbitration that reportedly rendered it impractical for Plaintiff's federal claims to continue in any forum and for Plaintiff's state law claim to continue in this Court. Dkt. 15 at 2. This led

the Parties to engage in good faith settlement negotiations in the hopes of a global resolution encompassing this matter. *Id.* Based on these representations, Plaintiff filed a consent motion for a limited stay, which the Court granted. Dkts. 15, 16.

On August 11, 2025, Defendant's counsel emailed Plaintiff's counsel:

> Thanks for your client's recent [redacted] settlement demand and for sharing the information regarding his post-Transdev earnings. After speaking with our client, I am authorized to convey Transdev's opening counteroffer of [redacted] and forbearance of further proceedings arising out of the workers' compensation matter in consideration for a general release, confidentiality clause, and other standard terms and conditions of settlement. Please let us know how you wish to proceed after discussing this matter with your client. Thank you.

Dkt. 23-2 at 7.[1] Over the next few days, counsel for the Parties continued to exchange counteroffers of what appear to be different monetary amounts. *See id.* at 4-7. On August 14, 2025, Defendant's counsel emailed:

> As I'm sure you gathered from our messaging and offers, our client valued a reasonable settlement at [redacted]. Nevertheless, after some further deliberation, our client is willing to meet in the middle at [redacted] for the sake of reasonable compromise. We will work up a formal settlement and release agreement along those lines, but please confirm whether we have an agreement in principle. Thank you.

*Id.* at 3.

On August 18, 2025, Plaintiff's counsel responded, "Yes, Plaintiff accepts." *Id.* at 2. Defendant's counsel replied, "I am confirming that the Parties have an agreement in principle to resolve this dispute for a total of [redacted]." *Id.* at 1. On August 19, 2025, Plaintiff's counsel replied, "Yes, we have an agreement in principle to resolve the dispute for [redacted]." *Id.*

---

[1] The Court notes that, despite an apparent attempt to file unredacted versions of the email correspondence under seal, the documents actually filed under seal appear to be the same redacted versions that were filed on the public docket. Accordingly, the Court has not been able to consider any information that Defendant redacted.

2

On August 20, 2025, Defendant's counsel emailed:

> [P]lease find attached for your review a draft Settlement Agreement and General Release. If everything looks to be in order, please send us back a scanned copy signed by your client, which we'll be happy to forward to our client for countersignature. Otherwise, please make any suggested edits you have in track changes. Let us know if you have any questions.

Dkt. 23-3 at 1. Defendant did not include the apparent attachment in any of its filings, under seal or otherwise. *See* Dkt. 23-3 at 10-20 (eleven pages just stating "REDACTED"); Dkt. 25-1 at 10-20 (same). The Parties then sought and obtained a further stay of the proceedings. Dkts. 18, 19.

On September 8, 2025, Plaintiff's counsel emailed Defendant's counsel:

> There is one other item my client brought up before signing the settlement agreement. He took and passed his alcohol & drug tests in 2024-2025 and asks that the company confirm that he passed them. We don't have to put that term in the settlement agreement. If you can just send me an email or a document confirming that. Mr. Snyder says he's been taking these tests for 30 years and never failed one of them.

Dkt. 23-4. Later that day, Defendant's counsel responded that Plaintiff could go through his union to raise that inquiry. Dkt. 23-5 at 5. Over the course of the next few days, Defendant's counsel then sent several follow up emails regarding the status of the signing of the Settlement Agreement. *Id.* at 3-4.

On September 11, 2025, the Parties' counsel spoke over the phone. *See id.* at 2. Plaintiff's counsel explained that Plaintiff had "three or four" areas of the Settlement Agreement that he wished to edit, and the Parties agreed that Plaintiff's counsel would send Defendant's counsel a redline with proposed edits. *Id.*

On September 12, 2025, Plaintiff's counsel emailed:

> After my last communication with you late yesterday afternoon, I received word from Mr. Snyder last night that he does not want to sign the agreement (it would appear, even with the conditions that I've listed). Discuss it with your client as to what you would like to do, whether that's set a briefing schedule or some other

3

action.

*Id.* at 1. That same day, the Parties filed a Joint Status Report, updating the Court on their respective positions, requesting one final stay of the proceedings and agreeing on a briefing schedule should motions practice become necessary. Dkt. 20. The Court granted the request. Dkt. 21.

As of October 3, 2025, Plaintiff had still not signed the Settlement Agreement. *See* Dkt. 6. Thereafter, Defendant filed this Motion to Enforce the Settlement Agreement. Dkt. 22. Plaintiff did not respond.

## II. LEGAL STANDARD

"District courts have the inherent authority to enforce settlement agreements." *Patel v. Barot*, 15 F. Supp. 3d 648, 653 (E.D. Va. 2014) (citing *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002)). "Because exercise of the authority to enforce settlement agreements depends on the parties' agreement to a complete settlement, the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Hensley*, 277 F.3d at 540. "In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties." *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 (4th Cir. 1991). "If there is a factual dispute over the existence of an agreement, over the authority of the attorneys to enter into the agreement, or over the agreement's terms, . . . the court must 'conduct a plenary evidentiary hearing in order to resolve that dispute,' and make findings on the issues in dispute." *Hensley*, 277 F.3d at 541 (quoting *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). "[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Id.* (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir.1997)).

## III. ANALYSIS

In its Motion, Defendant argues that the Parties reached a complete settlement agreement with ascertainable terms and conditions on August 19, 2025. Dkt. 23. Although Plaintiff failed to file a response,[2] Defendant has provided the relevant correspondence between the Parties' counsel and the authenticity of such correspondence is undisputed and no evidentiary hearing is necessary. Here, both Parties repeatedly represented to each other and to this Court that they had only reached an agreement "in principle," and the Court cannot otherwise ascertain the terms and conditions of the agreement on the record before it. Moreover, in one of the last correspondences between the Parties, Plaintiff's counsel indicated that Plaintiff had "three or four" areas of the Settlement Agreement that he wished to edit, and the Parties agreed that Plaintiff's counsel would send Defendant's counsel a redline with proposed edits. Dkt. 23-5 at 2. This further suggests that the Parties had not yet agreed on the terms of the Settlement Agreement. Accordingly, based on the objectively manifested intentions of the Parties, the Court cannot conclude that a complete agreement has been reached, and thus the Motion will be denied.

To establish the existence of an enforceable contract, there must be a meeting of the minds as to the material terms. *See Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) ("Perhaps, most importantly, 'mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts. Until the parties have a distinct intention common to both . . . there is a lack of mutual assent and, therefore, no contract.'"). Here, the record provided by Defendant reflects a lack of mutual assent. The emails between the parties reflect that the parties had only agreed "in

---

[2] The Fourth Circuit has recently admonished district courts against granting motions simply because no opposition is filed. *See Guzman v. Acuarius Night Club LLC*, 2026 WL 406093, at *3-4 (4th Cir. Feb. 13, 2026) (reversing district court because "Rule 12(b)(6) simply does not provide for any such default relief").

5

principle" to what is likely a monetary settlement amount (though the Court cannot be sure due to the lack of an unredacted filing). *See* Dkt. 23-2 at 3 (August 14, 2025 email stating that Defendant was "willing to meet in the middle at [redacted] for the sake of reasonable compromise" and asking Plaintiff's counsel to "please confirm whether we have an agreement in principle"); *id.* at 1 (August 18, 2025 email from Defendant's counsel "confirming that the Parties have an agreement in principle to resolve this dispute for a total of [redacted]"); *id.* (August 19, 2025 email from Plaintiff's counsel stating, "we have an agreement in principle to resolve the dispute for [redacted]"); *see also* Dkt. 18 (reporting that "the Parties reached an agreement in principle to settle this matter on August 19, 2025"). Moreover, counsels' communications reflect an understanding that the parties' agreement was not final until it was reduced to writing. *See* Dkt. 23-2 at 3 ("We will work up a formal settlement and release agreement along those lines, but please confirm whether we have an agreement in principle.").

It is further clear that, when a written agreement was drafted, the parties expected to and did continue to negotiate over the terms. *See* Dkt. 23-3 at 1 ("[P]lease make any suggested edits you have in track changes."); Dkt. 23-5 at 2 ("[Plaintiff] now has 'three or four' areas he wants to edit. We agreed that you would send a redline with these edits, as is typical, so that we may review and discuss them with our client."). Although Defendant asserts that none of Plaintiff's proposed edits sought to revise the material terms of the agreement, Defendant has not actually provided this Court with evidence to support such a finding. *See supra* note 1. Moreover, Defendant actually rejected one of the proposed terms. Dkt. 23-5 at 5 (requiring Plaintiff to make a claim through his union rather than including the term as part of the agreement). Courts recognize that such negotiations as to terms reflect a lack of mutual assent and the lack of a valid and enforceable contract. *See Cole v Champion Enter., Inc.*, 305 F. App'x 122, 129 (4th Cir. 2008) ("Over the next

6

few months, the parties continued to negotiate over the eventual final terms of the contract. These negotiations prevented Cole or Champion from reasonably believing that they were already obligated by an enforceable agreement."). And, ultimately, the parties did not reach an agreement as to the terms in the proposed writing. *Id.* at 1 ("I received word from Mr. Snyder last night that he does not want to sign the agreement . . . .").

For all of these reasons, the Court cannot conclude that a complete agreement has been reached nor determine the terms and conditions of that agreement. *See Hensley*, 277 F.3d at 540. Accordingly, the Motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Enforce Settlement Agreement (Dkt. 22) is DENIED; and it is

FURTHER ORDERED that, given the posture of this case, it would be beneficial for the parties to meet with the assigned magistrate judge and the Parties are DIRECTED, within THIRTY (30) DAYS of the issuance of this Memorandum Opinion and Order, to contact the chambers of U.S. Magistrate Judge Lindsey R. Vaala to schedule a settlement conference; and it is

FURTHER ORDERED that, within FOURTEEN (14) DAYS of the settlement conference with Judge Vaala, the parties are DIRECTED to submit a Notice to the Court indicating whether: (i) the parties have settled the case; or (ii) the parties request to return the case to the Court's active docket (with an agreed upon proposed schedule to complete briefing on Defendant's Motion to Dismiss).

It is SO ORDERED.

Alexandria, Virginia
February 25, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

7